CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

December 13, 2024

LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANGELA S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:23-cv-00228 |
| | ) |
| COMMISSIONER OF | ) By: Elizabeth K. Dillon |
| SOCIAL SECURITY ADMINISTRATION, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Angela S. (Angela) brought this action for review of the final decision made by defendant, the Commissioner of Social Security (Commissioner), finding her not disabled and therefore ineligible for Social Security disability insurance benefits and supplemental security income under the Social Security Act. (Compl., Dkt. No. 2.) Both Angela and the Commissioner moved for summary judgment. (Dkt. Nos. 12, 15.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred the motion to U.S. Magistrate Judge C. Kailani Memmer for a report and recommendation (R&R). On August 7, 2024, the magistrate judge issued her R&R, finding that substantial evidence supported the Commissioner's final decision. (R&R, Dkt. No. 18.) Angela filed an objection to the R&R on August 21, 2024 (Obj. to R&R, Dkt. No. 19), and the Commissioner filed a response thereafter (Resp. to Pl.'s Obj. to R&R, Dkt. No. 21).

After de novo review of the pertinent portions of the record, the R&R, and the filings by the parties, in conjunction with the applicable law, the court agrees with the magistrate judge's

---

[1] Because of privacy concerns, the court is adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts only use the first name and last initial of the claimant in social security opinions.

recommendation. Accordingly, the court will overrule Angela's objections, adopt Judge Memmer's R&R in its entirety, and affirm the Commissioner's final decision.

## I. BACKGROUND

The court adopts the procedural background and recitation of facts as set forth in the report. (R&R 3–14.) Briefly, the Administrative Law Judge (ALJ) determined that Angela suffers from the severe impairments of supraventricular tachycardia (SVT), obesity, and edema of the ankles and feet. (Admin. Tr. 25, Dkt. No. 7-1.) These impairments or combination of impairments, the ALJ reasoned, do not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 27.)

The ALJ proceeded to conclude that Angela retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except the claimant can frequently balance. (*Id.* at 28.) "She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl but cannot climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to temperature extremes and humidity. She should avoid exposure to industrial hazards. She is expected to be off task 10% of the workday and absent 1.5 days per month." (*Id.*) The ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," including work as a clerical assistant, router, and classifier. (*Id.* at 35.) Thus, the ALJ determined that plaintiff was not disabled. (*Id.* at 36.)

2

## II.  DISCUSSION

### A. Standard of Review

When reviewing the decision of an ALJ, the court must uphold the factual findings and final decision of the Commissioner if they are supported by substantial evidence and were reached through application of the correct legal standard.  See 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Shelley C. v. Comm'r of SSA*, 61 F.4th 341, 353 (4th Cir. 2023) (internal quotation marks omitted).  "It consists of more than a mere scintilla of evidence but may be less than a preponderance."  *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted).  "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  "Rather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, [the court] defer[s] to the ALJ's decision."  *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (internal quotation marks omitted).

Nonetheless, an "ALJ must adequately explain his reasoning" to allow the court to "engage in a meaningful review."  *Woods v. Berryhill*, 888 F.3d 686, 692–93 (4th Cir. 2018), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023).  "Indeed, [Fourth Circuit] precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion."  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019).  Instead, "ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions."  *Arakas v. Comm'r*, 983 F.3d 83, 95 (4th Cir. 2020) (citing

*Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). If it does so, and the decision is supported by substantial evidence, the ALJ's decision must be upheld. *See id.* at 94; 42 U.S.C. § 405(g).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), this court reviews de novo the portions of the report to which a timely objection has been made. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). "If a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only." *Id.*

### B. Angela's Objections to the R&R

Angela raises many objections to the R&R, all of which repeat arguments raised below. This court addresses three objections regarding supposed errors in the R&R's conclusions. Angela asserts: (1) the ALJ's assessment of Angela's obesity did not comply with the requirements of Social Security Ruling (SSR) 19-2p and is not supported by substantial evidence; (2) the ALJ failed to perform a proper assessment of Angela's physical impairments in determining her RFC; and (3) the ALJ did not adequately explain his reasoning for his conclusion that Angela's subjective allegations were inconsistent with the medical evidence. Each objection is discussed in turn.

    **1. ALJ's evaluation of Angela's obesity under SSR 19-2p was sufficient and supported by substantial evidence.**

First, Angela argues that the R&R "erred in concluding the ALJ's assessment of [Angela's] obesity complied with the requirements of SSR 19-2p and is supported by substantial

4

evidence." (Pl. Obj. 1.) Angela acknowledges that the ALJ is not required to include a detailed analysis regarding her obesity, but notes that the ALJ must consider a claimant's obesity in steps two through five of the five-step inquiry. (*Id.*) Angela contends that "the ALJ failed to actually explain how he reached his conclusion as to whether [Angela's] obesity causes any limitations." (*Id.* 2–3.)

The Social Security Administrations uses a five-step process to evaluate whether someone is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4). The Fourth Circuit summarized this process as follows:

> [T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015).

As relevant in this case, "[o]besity is not a listed impairment; however, the functional limitations caused by the [medically determinable impairment (MDI)] of obesity, either alone or in combination with another impairment(s), may medically equal a listing." SSR 19-2p, 2019 WL 2374244, at *2 (May 20, 2019). "Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment(s)." *Id.* The ALJ must evaluate "each case based on the information in the case record." *Id.* at *4. When assessing a claimant's RFC, the ALJ "must consider the limiting effects of obesity." *Id.* "An ALJ is [] not required to include a detailed analysis regarding a claimant's obesity." *Lakeysia G. v. Kijakazi*, No. 4:22-cv-0005, 2023 WL 2428292, at *5 (W.D. Va. Mar. 9, 2023), *report and*

5

*recommendation adopted*, No. 4:22-cv-0005, 2023 WL 2632820 (W.D. Va. Mar. 24, 2023).[2]

Additionally, "to challenge an ALJ's obesity analysis, the claimant must advance additional, obesity-related functional limitations not accounted for by the ALJ in his RFC determination." *Tonya D. v. Kijakazi*, No. 7:20-cv-00777, 2022 WL 1126623, *4 (W.D. Va. Feb. 7, 2022), *report and recommendation adopted*, No. 7:20-cv-00777, 2022 WL 794974 (W.D. Va. Mar. 15, 2022).

In Angela's case, the ALJ determined that she had a severe impairment of obesity at step two of the five-step inquiry. (Admin. Tr. 25.) At step three, the ALJ correctly stated that obesity is not a listed impairment, but "should be considered at each step of the sequential evaluation process as appropriate in conjunction with the claimant's impairments (SSR 19-2p)." (*Id.* at 28.) The ALJ then noted that he "considered [Angela's] obesity in relation to the other body systems listings, as required by [SSR 19-2p]" and found "that the medical evidence does not support a finding that [Angela's] obesity has reached a level that would cause the other impairments to meet or medically equal a listed impairment." (*Id.*)

In assessing the RFC, the ALJ reviewed Angela's medical treatment records from 2015 to 2022, which highlighted her obesity. (*Id.* at 29–31.) During her doctor visits in 2018, her obese body mass index (BMI) records were accompanied by "normal heart rate, sounds, rhythm, and pulses, and no edema of the feet or legs." (*Id.* at 29.) In 2019, her BMI was 43.8, but she had a normal heart rate with "no edema of the feet or legs, and normal strength, balance, gait, and sensation." (*Id.*) The ALJ further noted that Angela had a "normal examination" with her

---

[2] The magistrate judge in *Lakeysia G.* cites to *Richards v. Astrue* where the district court noted, "there is no language in SSR 02-1p that directs the ALJ to include a lengthy analysis, or indeed, any precise analysis regarding obesity when issuing an opinion. It only mandates that the ALJ consider the effect of obesity during steps two through five of the five-step inquiry." *Richards v. Astrue*, No. 6:11-cv-00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012). This court notes that SSR 19-2p rescinded and replaced SSR 02-1p in 2019. SSR 19-2p at *1. However, the same holds true. There is no language in SSR 19-2p that directs the ALJ to include a lengthy analysis regarding obesity. Rather, the ruling mandates that the ALJ "consider the limiting effects of obesity when assessing a person's RFC." *Id.* at *4.

cardiologist in July 2020, "aside from an obese BMI." (*Id.* at 30.) Again in 2022, Angela saw her primary care provider, who noted that she "had an obese BMI, but normal sensation, gait, stance, and reflexes" in addition to "a normal cardiovascular examination." (*Id.* at 31.) In reaching his conclusions, the ALJ evaluated the objective medical evidence, specifically taking into account "trace edema of the ankles and feet" and Angela's frequent morbidly obese BMI, to find that she "would be limited to light exertion with postural and environmental limitation." (*Id.* at 32.) Further limitations were not warranted, the ALJ reasoned, "as she had normal gait, station, sensation, reflexes, and strength." (*Id.* at 32.) In his decision, the ALJ referenced a variety of medical opinions that are consistent with his findings.

At step four, the ALJ determined that Angela had no past relevant work, and therefore, no further analysis of her obesity was necessary. (*Id.* at 34.) Lastly, at step five, the ALJ concluded that, despite Angela's impairments, which incorporated the ALJ's obesity considerations mentioned above, there were other jobs she could perform. (*Id.* 35–36.) Overall, the ALJ explicitly mentioned obesity and considered its limiting effects on Angela in reaching his decision. Accordingly, the court finds the ALJ's evaluation of Angela's obesity under SSR 19-2p sufficient and supported by substantial evidence.[3]

---

[3] Angela heavily relies on *Lakeysia G. v. Kijakazi*, No. 4:22-cv-00005, 2023 WL 2428292, *1 (W.D. Va. Mar. 9, 2023), to support her argument that the ALJ did not comply with the requirements of SSR 19-2p. (Pl. Obj. 1–2.) In that case, the magistrate judge recommended the court remand the case back to the Commissioner so that he could "meaningfully discuss the relationship between [claimant's] 'extreme' obesity and her back and knee impairments and their effect on her functional abilities." *Lakeysia G.*, No. 4:22-cv-00005, 2023 WL 2428292, *6. However, in *Lakeysia G.*, the ALJ only briefly mentioned the claimant's history of obesity and failed to address it further in the RFC analysis. *Id.* at *5. In this case, the ALJ mentioned Angela's obesity throughout the RFC analysis, providing specific references to her BMI accompanied with other observations during Angela's various medical appointments. (Admin. Tr. 28–34.) Therefore, remand to the Commissioner is not warranted because the ALJ appropriately considered Angela's obesity in accordance with SSR 19-2p.

### 2. ALJ performed a proper assessment of Angela's physical impairments in determining her RFC.

Next, Angela contends that the R&R erred in concluding that the ALJ engaged in a sufficient narrative discussion of the evidence required under SSR 96-8p. Specifically, she argues that "the ALJ did not provide an explanation as to how he arrived at his RFC findings and[,] instead, just provided his conclusion that [Angela] would be off task 10% of the workday and absent an average of 1.5 days per month." (Pl. Obj. 3–4.) In addition, she asserts that the ALJ failed to properly consider Angela's SVT episodes and related symptoms. (*Id.*)

"Evaluating an RFC requires an ALJ to consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work." *Dowling v. Comm'r of SSA*, 986 F.3d 377, 387 (4th Cir. 2021) (internal citations and quotations omitted). Pursuant to SSR 96-8p, an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. July 2, 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).

Here, the ALJ provided a comprehensive narrative explanation, detailing how the evidence supports each conclusion, in accordance with the requirements set forth in SSR 96-8p. (*See* Admin. Tr. 27–35.) The decision effectively incorporates both medical facts and nonmedical evidence to substantiate the ALJ's findings. (*Id.*) In relevant part to Angela's objection, the ALJ provides a detailed account of Angela's SVT episodes, mentioning her emergency room visits and treatment plans. The ALJ notes a 2015 emergency room visit, where

8

Angela was first diagnosed with SVT and successfully treated with adenosine medication. (*Id.* at 29.) In early 2017, she experienced another SVT episode, which resolved with treatment and resulted in her discharge. During this time, Angela regularly saw her cardiologist and "reported she was doing well." (*Id.*) Between September 2019 and February 2020, Angela presented to the emergency department with SVT symptoms, where she was treated effectively and discharged. On one of those occasions, she indicated that she had run out of her heart medication for a week and a half prior to the episode. (*Id.*) In July 2020, Angela visited her cardiologist again, where she denied any new concerns and stated she was doing well. (*Id.* at 30.) At a follow-up appointment in September 2020, Angela mentioned that her last SVT episode occurred in February 2020 and that she had not experienced any new episodes since resuming her medication. (*Id.*) The ALJ also notes various emergency room visits through May 2022, with Angela being discharged in stable condition on each occasion, either the same day or the next, upon arrival. (*Id.* at 30–31.)

Thereafter, the ALJ notes that "[a]lthough the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine, conservative, and/or successful. . . . As to the claimant's supraventricular tachycardia, the record contains routine visits with her cardiologist, during which the claimant often denied new onset of symptoms." (*Id.* at 31.) During her medical visits, Angela's cardiologist regularly recommended that she continue her medication. The ALJ notes that the cardiologist offered her an ablation in 2022 to treat her SVT, but Angela declined the surgery. "The remaining treatment for this impairment consisted largely of emergency room visits for heart palpitations and occasional chest pain. However, the claimant always improved with Adenosine or Valsalva maneuvers." (*Id.*) The ALJ then mentions Angela's testimony at her hearing, where she indicated that she had short

9

episodes, lasting 3–5 minutes, which improved with Valsalva maneuvers. For longer episodes, she typically called Emergency Medical Services (EMS), which resolved with the administration of the medicine adenosine. (*Id.*) The ALJ notes, "[t]he claimant was typically only hospitalized for short periods (sometimes just a few hours) and was always discharged in stable condition without symptoms of tachycardia. The record also shows these episodes requiring hospitalization occurred infrequently."[4] (*Id.*) Considering all the information mentioned above, in conjunction with other information provided on the record, the ALJ concluded:

> [Angela] would be limited to light exertion with postural and environmental limitations. Due to the infrequent nature of these episodes, she is expected to be off task 10% of the workday and absent an average of 1.5 days per month. Additionally, the claimant should avoid exposure to industrial hazards and not climb ladders, ropes or scaffolds. Further limitations are not warranted as the claimant regularly had normal cardiac examinations with her primary care provider and cardiologist.

(*Id.* at 32.)

Considering the evidence in its entirety, the court can "build an accurate and logical bridge" of the ALJ's reasoning from the evidence discussed in his decision to his RFC findings of Angela. *Arakas*, 983 F.3d at 95. Accordingly, the court finds that the ALJ's assessment of Angela's physical impairments in determining her RFC under SSR 96-8p sufficient and supported by substantial evidence.

### 3. ALJ properly evaluated Angela's subjective allegations.

Lastly, Angela argues that the R&R "erred in concluding the ALJ's opinion includes a thorough and robust discussion of both [Angela's] medical history and her testimony." (Pl. Obj. 4–6.) Specifically, Angela contends that the ALJ did not "adequately explain[] his reasoning for

---

[4] The ALJ references one SVT episode in 2019, two hospital visits in 2020, five documented SVT episodes in 2021, and two additional episodes in 2022. (Admin. Tr. 31–32.)

his conclusion that [Angela's] statement regarding the intensity, persistence[,] and limiting effects of her alleged symptoms were not consistent with the medical evidence." (*Id.*) These arguments largely mirror those that Angela made in her brief to the magistrate judge in support of summary judgment, albeit now in a condensed format.[5] (*See* Dkt. No. 13, 26–29.)

When evaluating a claimant's subjective statements about impairments and symptoms, ALJs follow a two-step framework. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529. First, the ALJ "determine[s] whether the individual has a medically determinable impairment [] that could reasonable be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Second, the ALJ "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult." *Id.* at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* As relevant in this case, the Fourth Circuit has noted:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted

---

[5] Other courts have recognized in the social security context, "[t]he Court may reject perfunctory or rehashed objections to R&Rs that amount to a second opportunity to present the arguments already considered by the Magistrate Judge." *Heffner v. Berryhill*, No. 2:16-cv-820, 2017 WL 3887155, at *3 (D.S.C. Sept. 6, 2017) (quoting *Felton v. Colvin*, No. 2:12-cv-558, 2014 WL 315773, at *7 (E.D. Va. Jan. 28, 2014)). Because "the purpose of magistrate review is to conserve judicial resources," a "mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." *Nichols v. Colvin*, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015) (internal citations omitted). Angela's third objection is very general, and this court largely agrees with the Commissioner's characterization. (*See* Resp. to Pl.'s Obj. to R&R 5 ("In summary, Plaintiff's objections merely repeat the arguments raised in her opening brief [], though in an abbreviated format and at times so conclusory and briefly, it is difficult to extrapolate the basis for the Plaintiff's argument.").) The court will conduct a de novo review of the objection, but notes that this likely only warrants a review of the magistrate's recommendation for clear error only, as Angela objects generally, without "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Elijah*, 66 F.4th at 460.

> to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (citing *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)). "[W]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Harris v. Kijakazi*, No. 21-1853, 2022 WL 2987928, at *1 (4th Cir. July 28, 2022) (quoting *Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)). "Under a substantial evidence standard of review, an administrative fact-finder's determinations on issue of credibility should be virtually unreviewable on appeal." *Id.* (citing *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1149 (Fed. Cir. 1997)).

Here, the ALJ adequately addressed Angela's subjective allegations and provided a detailed explanation to support his RFC findings. Angela's primary objection centers around testimony she gave during a hearing where she indicated experiencing "tachycardia with chest pain and fatigue." (Admin. Tr. 29.) She also mentioned having "episodes of tachycardia every few months and monthly episodes of chest pain," which were followed by "two to three days" of fatigue. (*Id.*) Additionally, Angela complained of swelling in her ankles, which required her to "recline and elevate her feet." (*Id.*) Despite these symptoms, Angela testified that "she was able to perform her own daily activities, including cooking, cleaning, and walking the dog." (*Id.*)

Angela argues that the ALJ did not adequately address how her alleged symptoms were inconsistent with the medical evidence. However, that argument seems to ignore the nearly two

and a half pages of narrative discussion where the ALJ thoroughly discusses the evidence,[6] with record citations, before finding that:

> The claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the record. The facts in the record do not dispute that the claimant has conditions, which singly or in combination, may cause her pain or other difficulty. What these pieces of evidence suggest is that the claimant's symptoms may not exist at the level of severity assumed by the claimant's testimony at the hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity. The above residual functional capacity gives adequate weight to the claimant's complaints as determined to be consistent with the evidence.

(*Id.* at 31.) The ALJ considered the type, dosage, and effectiveness of the medication and other treatment that Angela used to alleviate her symptoms. (*Id.*) He noted that the "treatment has been essentially routine, conservative, and/or successful." (*Id.*) Furthermore, as previously noted above, Angela testified that her short episodes of heart palpitations and chest pains, lasting 3–5 minutes, improved with Valsalva maneuvers. Her more severe episodes that involved hospitalization were infrequent and often only required a few hours of treatment before being discharged in stable condition. (*Id.*) The ALJ's detailed explanation adequately justifies his conclusion that Angela's subjective allegations were inconsistent with the medical evidence.

The ALJ also addressed Angela's edema of her ankles and feet. He notes that she had trace edema on occasion during doctor visits, but Angela stated that it "resolved overnight and was usually associated with summer heat or being outdoors." (*Id.* at 32.) Furthermore, the ALJ noted that "[t]here is no evidence [Angela] required hospitalization for this impairment, and objective examinations with primary care providers typically showed otherwise unremarkable findings." (*Id.*) Acknowledging Angela's statements about her pain and symptoms, while

---

[6] The court need not revisit those details, as they have largely been summarized above. (*See* discussion *supra* Section II.B.2.)

13

properly considering the objective medical evidence—including diagnostic imaging, testing, and physical examination results—the ALJ found there to be mild or no abnormalities. Accounting for Angela's morbidly obese BMI, the ALJ concluded that she "would be limited to light exertion with postural and environmental limitations. However, further limitations are not warranted as she had normal gait, station, sensation, reflexes, and strength." (*Id.*) This, too, adequately justifies the ALJ's conclusion that Angela's subjective allegations were inconsistent with the medical evidence.[7]

Considering the evidence in its entirety, the court can "build an accurate and logical bridge" to the ALJ's conclusion that Angela's subjective allegations are inconsistent with the record medical evidence. *Arakas*, 983 F.3d at 95. Accordingly, the court finds that the ALJ adequately discussed both Angela's medical history and her testimony.

---

[7] Angela also relies on *Arakas v. Comm'r*, 983 F.3d 83, 100 (4th Cir. 2020), and *Brown v. Comm'r SSA*, 873 F.3d 251, 270 (4th Cir. 2017), to support her position that the ALJ erred in not adequately considering her subjective testimony about her daily activities.

In *Arakas*, the Fourth Circuit found that the ALJ's analysis of a claimant's activities was erroneous in two ways: (1) he improperly disregarded the claimant's qualifying statement regarding the limited extent she could perform daily activities, and (2) he failed to adequately explain how her limited ability to carry out daily activities supported his conclusion that she could sustain an eight-hour workday. *Arakas*, 983 F.3d at 99. The ALJ in that case did not mention or address key testimony of the claimant that alleged difficulties performing her daily activities. That is not the case here. The ALJ considered Angela's daily activities (such as cooking, cleaning, driving a car, getting groceries, and walking her dog), as well as her alleged symptoms—including fatigue—and concluded that her reported daily activities suggest less functional loss than generally alleged. (Admin. Tr. 28–34.)

In *Brown*, the Fourth Circuit found that the "ALJ noted various of Brown's activities—such as 'cooking, driving, doing laundry, collecting coins, attending church and shopping'—but did not acknowledge the limited extent of those activities as described by Brown or explain how those activities showed that he could sustain a full-time job." *Brown*, 873 F.3d 251, 269. The court also noted other "instances of inaccuracy and unreasonableness in the ALJ's adverse credibility finding" of Brown. *Id.* at 270. This court need not rehash all of those errors by that ALJ because they do not exist in this case. The ALJ notes Angela's statements about her daily activities and mentions her feelings of fatigue. (Admin. Tr. 28–34.) Considering the evidence in its entirety, the court can "build an accurate and logical bridge" between the ALJ's reasoning from the evidence discussed in his decision and his conclusion regarding Angela's RFC. *Arakas*, 983 F.3d at 95.

14

III.  CONCLUSION AND ORDER

After review of Angela's objections and the record, the court finds that the ALJ's decision was legally sufficient and supported by substantial evidence.  Accordingly, it is hereby ORDERED as follows:

1. The R&R (Dkt. No. 18) is ADOPTED;

2. Plaintiff's objections (Dkt. No. 19) are OVERRULED;

3. The Commissioner's motion for summary judgement (Dkt. No. 15) is GRANTED;

4. Plaintiff's motion for summary judgment (Dkt. No. 12) is DENIED; and

5. The Commissioner's decision is AFFIRMED.

An appropriate judgment order will be entered.

Entered: December 13, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge